IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**STEVEN KERN,**

*Plaintiff,*

*v.*

**COMPASS, INC.,**

*Defendant.*

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA") to generate business for themselves. Plaintiff Steven Kern ("Plaintiff Kern" or "Kern") brings this Class Action Complaint and Demand for Jury Trial against Defendant Compass, Inc. ("Defendant" or "Compass") to stop the Defendant from violating the TCPA by training its agents to place calls to consumers without consent including calls that are being placed using pre-recorded voice messages. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kern, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Kern is a resident of Los Angeles, CA.

2. Defendant Compass is a corporation registered in Delaware, with its headquarters located in New York, New York. Defendant Compass has regional offices throughout the US including offices located in California.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from the Defendant from this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in May 2025 alone, at a rate of 155.8 million per day. www.robocallindex.com (last visited June 8, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Compass is a real estate brokerage that operates throughout the US.[3]

14. Compass's business model depends on agent productivity, from which it derives direct revenue through commission splits, monthly fees, and other transaction-related income.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/compassinc/about/

15. To drive this productivity, Compass mandates and institutionalizes cold calling as a central sales tactic. This is not a decentralized or rogue practice; rather, Compass has implemented a corporate infrastructure that trains, equips, and incentivizes its agents to engage in outbound cold calling to consumers, including those who have not consented to be contacted.

16. Compass maintains a formal coaching ecosystem known as "Coaching at Compass," which offers live sessions, video libraries, and official coaching certifications.

17. This platform is managed and operated by Compass itself and features certified trainers such as Chirag Shah and Gregg Sugerman, who repeatedly emphasize the importance of prospecting via cold calls.

18. Their training includes scripts, call structure, database organization, and techniques to overcome call reluctance. These coaches are highlighted in Compass marketing, speak at Compass events such as Compass Retreat, and are presented as role models for agents.

19. Compass agents are regularly instructed through "Momentum Mondays" and other internal programming to upload consumer data into Compass CRM systems and to execute call campaigns using pre-recorded message delivering power dialers like Mojo Dialer. These systems allow agents to target thousands of consumers in a geographic area and drop pre-recorded voicemails, as in the case of Plaintiff Kern.

20. Job listings for Compass-affiliated brokerages and internships routinely emphasize cold calling as a required skill, often noting a "passion to hunt" and citing Mojo Dialer proficiency.

21. Compass's own website and agent profiles promote successful cold callers and teams who operate call centers or boast about lead generation through unsolicited outreach.

22. Training videos and scripts provided by Compass and its affiliate teams teach agents how to extract contact data using tools like Mojo and Cole Realty and then launch outbound

call campaigns. These tools include pre-recorded voicemail technology, and agents are trained on how to deploy it.

23. Compass has ratified this conduct by: Promoting cold calling using pre-recorded message delivering dialers; Publicly celebrating cold calling success stories; Promoting coaches who teach cold calling as essential to revenue generation; Failing to enforce any compliance mechanism to curb unlawful outreach; Continuing to receive and retain profits generated through cold-calling-based commissions.

24. This coordinated system resulted in calls like the one received by Plaintiff Kern: a pre-recorded solicitation from a Compass-affiliated agent with no prior relationship or consent.

25. The facts show that Compass does not merely tolerate illegal cold calling by its agents. It trains them to do it, provides the tools and scripts, promotes those who succeed through it, and profits directly from their unlawful outreach.

26. Defendant Compass ratifies this cold calling conduct by retaining the financial benefit, failing to discipline agents, and systematically training and equipping them to make these unlawful calls.

27. In response to these calls, Plaintiff Kern brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF KERN'S ALLEGATIONS**

28. Plaintiff Kern is the subscriber and sole user of the cell phone number ending with 4002.

29. On February 22, 2025 at 11:43 AM, Plaintiff Kern received an unsolicited call to his cell phone from 310-871-1426.

30. This call was not answered, but a pre-recorded voicemail was left stating:




31. Plaintiff believes that this voicemail was pre-recorded because of its generic nature and because the recording contains an audible 'blip' followed by a 1-second unnatural pause before the message starts to play.

32. Consumers have posted complaints about 310-871-1426, including reports that indicate the use of pre-recorded messages.[4]

[4] https://www.nomorobo.com/lookup/310-871-1426

REVIEWS +13108711426

Did this number call you? ADD A REVIEW

Other reported by *anonymous* 23.12.2023
*(robocall / recorded message)*

Other reported by *anonymous* 23.12.2023
*(robocall / recorded message)*

Other reported by *anonymous* 23.12.2023
*(robocall / recorded message)*

Other reported by *anonymous* 23.12.2023
*(robocall / recorded message)*

Scam reported by *anonymous* 23.12.2023
Unsolicited. *(robocall / recorded message)* [5]

33. The voicemail was left by Kirk Shah, who states that he is calling from Compass real estate brokerage.

34. Based off of Shah's identification of Compass in the recording, Plaintiff understood the call to be authorized by Compass.

35. Shah is listed as a Compass real estate agent, as per Realtor.com:

**Contact details**

Compass
2113-2115 Main St., SANTA
MONICA, CA, 90405 [6]

36. In the voicemail, Shah states that he is calling as the assistant of Victor Nissani. Nissani was a Compass real estate agent at the time of the call.

[5] https://callfilter.app/13108711426
[6] https://www.realtor.com/realestateagents/619514d9b4204ac707b6204f

COMPASS Buy Rent Sell Compa



Victor Nissani

REALTOR® | DRE# 01412328
victor.nissani@compass.com

M: 310-710-8780

Work with Victor Nissani

[7]

37. Nissani has been a Compass real estate agent since approximately August 15, 2024:

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Nissani, Victor Cee |
| **Mailing Address:** | 1291 WOODRUFF AVENUE<br>LOS ANGELES, CA 90024 |
| **License ID:** | 01412328 |
| **Expiration Date:** | 04/26/25 |
| **License Status:** | LICENSED |
| **Salesperson License Issued:** | 01/08/04 |
| **Former Name(s):** | NO FORMER NAMES |
| **Responsible Broker:** | License ID: 01991628<br>Compass California, Inc.<br>9454 WILSHIRE BLVD #100<br>BEVERLY HILLS, CA 90212 |
| **Former Responsible Broker:** | License ID: 01385866<br>Forward Sunset Inc<br>From 06/21/2024 to 08/15/2024 |

[8]

38. Plaintiff Kern has never provided his cell phone number to Shah, Nissani, or any other Compass real estate agent.

39. Plaintiff Kern has never done business with Compass.

40. The unauthorized solicitation telephone call that Plaintiff Kern received from or on behalf of Compass have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

41. Plaintiff Kern listened to the full unsolicited voicemail that he received.

---

[7] https://www.compass.com/agents/victor-nissani/
[8] https://www2.dre.ca.gov/publicasp/pplinfo.asp?start=1

42. Seeking redress for these injuries, Plaintiff Kern, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

43. Plaintiff Kern brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) a Compass real estate agent called on their cellular telephone number (2) using an artificial or pre-recorded voice.

44. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Kern anticipates the need to amend the Class definitions following appropriate discovery.

45. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA:

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

47. **Adequate Representation**: Plaintiff Kern will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Kern has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Kern and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Kern nor his counsel have any interest adverse to the Class.

48. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Kern. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kern and the Pre-recorded No Consent Class)**

49. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

50. The Defendant transmitted unwanted telephone calls to Plaintiff Kern and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

51. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

52. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Kern requests a jury trial.

Respectfully Submitted,

**STEVEN KERN**, individually and on behalf of all others similarly situated,

DATED this 24th day of December, 2025.

By: /s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*